IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| KATHLEEN A CONN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-cv-05102-RK |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY; | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") decision finding the Plaintiff was not entitled to a waiver of recovery of $227,927.40 in overpaid benefits she received from September 1, 1998, to November 30, 2016, as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.

**Background**

Plaintiff is a former employee of the United States Postal Service. On September 14, 1999, Plaintiff filed an application for disability insurance benefits under the Social Security Act. Although Plaintiff's request was initially denied, on September 15, 2000, an ALJ entered its decision finding that Plaintiff is entitled to disability insurance benefits for a period of disability commencing February 6, 1997.

Plaintiff later sought worker's compensation benefits under the Federal Employees' Compensation Act. In November 2002 the United States Department of Labor sent a letter to SSA requesting information about Plaintiff's wages, which was necessary for the Department to determine Plaintiff's eligibility to receive FECA benefits. On November 14, 2002, the Department of Labor sent a letter notifying Plaintiff that she was entitled to FECA benefits beginning December 12, 1997. Plaintiff elected to receive FECA benefits (as of March 1, 1997), on November 19, 2002.

On November 28, 2016, SSA issued a notice informing Plaintiff she had been overpaid disability benefits in the amount of $227,927.40, from the period September 1, 1998, to November

30, 2016.[1] The overpayment was the result of Plaintiff receiving both Social Security disability benefits and FECA benefits without any offset as required by law. On October 24, 2016, Plaintiff filed a request for reconsideration, which was denied. Plaintiff requested a waiver of the overpayment on January 3, 2017, and requested a hearing before the ALJ. At the hearing before the ALJ on January 7, 2017, Plaintiff waived her right to representation after she was unable to find counsel to represent her and proceeded, as she does before this Court, pro se.

The ALJ entered its decision on January 12, 2018. The ALJ found Plaintiff was overpaid benefits in the amount of $227,927.40 for the period September 1, 1998, to November 30, 2016, after Plaintiff had received both Social Security disability benefits and FECA benefits without an offset as required by law. On September 12, 2018, the Appeals Council denied Plaintiff's request of review, making the ALJ's decision the final decision. Finally, on November 16, 2018, Plaintiff filed a complaint in this Court under § 205(g) of the Social Security Act (codified at 42 U.S.C. § 405(g)), challenging the ALJ's decision. SSA opposes Plaintiff's complaint.

**Standard of Review**

The Court's review of the ALJ's decision is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)); *see Gorman v. Astrue*, No. 08-0663-CV-W-REL-SSA, 2010 WL 427752, at *1 (W.D. Mo. Feb. 1, 2010) ("The standard for judicial review by this court is whether the decision of the [SSA] regarding plaintiff's 'fault' was supported by substantial evidence.") (citations omitted). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does

---

[1] The overpayment amount, an accumulation of more than eighteen years' of disability payments, was only discovered by a Government Accountability Office audit in March 2016.

not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

On appeal, Plaintiff challenges the ALJ's finding that she was not without fault as to the overpayment of Social Security disability benefits.[2]

Under Title II of the Social Security Act ("the Act") where a plaintiff has been overpaid old-age, survivors, or disability insurance benefits, the SSA may seek an adjustment or recovery of the overpaid benefits. 20 C.F.R. § 404.504. An overpayment is the difference between the amount of benefits and the amount to which the individual was actually entitled. *Id*. When the Commissioner of Social Security determines an individual has received an overpayment of benefits, federal law requires that "proper adjustment or recovery shall be made." 42 U.S.C. § 404(a)(1). However, recovery or adjustment of benefits must be waived if: (1) the plaintiff is not at fault for the overpayment, and (2) the adjustment or recovery of the overpayment would either defeat the purpose of the Act or be against equity and good conscience. 20 C.F.R. § 404.506(b)(1).

The plaintiff has the burden to prove he or she is eligible for waiver of overpayment. *Coulston v. Apfel*, 224 F.3d 897, 900 (8th Cir. 2000); *see also* 20 C.F.R. § 404.507 (that the SSA is at fault in making the overpayment "does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault"). A "[w]ithout fault" determination must include consideration of "any physical, mental, educational, or linguistic limitation" the individual to whom overpayment was issued may have. § 404(b)(2); *see* 20 C.F.R. § 404.507 (in determining whether an individual is without fault, the decisionmaker must consider "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental,

---

[2] To the extent Plaintiff's complaint cites to "Title II of the Americans with Disabilities Act" and appears to assert a claim of discrimination under the ADA, the Court notes that Plaintiff brings this complaint only against SSA. The ADA, which prohibits discrimination by a "public entity," 42 U.S.C. § 12132, does not apply to SSA. *See* 42 U.S.C. § 12131(1) (defining "public entity" as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority[.]") Because SSA does not fall within the provisions of the ADA, the Court lacks subject matter jurisdiction over any such claim. *See Elitt v. U.S.A. Hockey*, 922 F. Supp. 217, 223 (E.D. Mo. 1996).

educational, or linguistic limitations . . . the individual has.") Additionally, the applicable regulations provide:

> What constitutes fault . . . on the part of the overpaid individual . . . depends on whether the facts show that the incorrect payment to the individual . . . resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) . . . acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507.

Plaintiff argues the ALJ's decision is not supported by substantial evidence because there is no evidence that she was notified of a responsibility to report FECA benefits (benefits which she began receiving after having already obtained and had been receiving Social Security disability benefits). Initially, the Court notes in these circumstances, the burden is affirmatively placed on the party seeking to waive recovery of the overpayment to prove she is without fault. *Couston*, 224 F.3d at 900. Stated differently, the burden is not on SSA to prove (by presenting evidence) the overpaid claimant was *with* fault. Even accepting for purposes of argument Plaintiff's assertion that no evidence was presented to establish *actual knowledge* of a responsibility to report the additional FECA benefits, this does not fully capture "fault" as defined by federal law pertaining to the overpayment of SSA benefits. As Plaintiff's argument supposes, fault in this context certainly does include actual knowledge (specifically, failing to furnish information the plaintiff knew was material or accepting a payment that the plaintiff knew was incorrect). Fault also includes something less than actual knowledge, however. Less than actual knowledge, fault includes a plaintiff's failure to provide information they "should have known" was material or the plaintiff accepted a payment she "could have been expected to know" was not a correct payment. Thus, while actual knowledge may be a basis to find an overpaid claimant is not without fault, the same conclusion may be reached on the basis of knowledge or information the claimant "should have known" or "could have been expected to know."

In this case, after careful review of the whole record, the Court concludes the ALJ's decision finding, in relevant part, that Plaintiff accepted Social Security disability payments she

4

could have been expected to know were incorrect, is supported by substantial evidence. Plaintiff testified she received a letter from the Department of Labor when she was approved for FECA benefits on November 14, 2002. (TR 17.)[3] This letter was included in evidence before the ALJ. The letter specifically addressed the possibility that a FECA benefits-claimant may receive FECA benefits while already and continuing to receive Social Security disability benefits. The letter stated:

> If you elect FECA benefits, you may receive concurrently . . . benefits provided by the Social Security Act. However, the Social Security Act benefits have the following restrictions:
>
> (1) Social Security Act benefits paid for disability shall be reduced by the compensation payable.
>
> (2) FECA benefits will be reduced by the Social Security Act benefits paid on the basis of age and attributable to your federal service.

Doc. 19-1 at 28. Plaintiff signed the attached form electing to receive FECA benefits on November 19, 2002, with an effective date for FECA benefits of March 1, 1997. (TR 29.) Plaintiff testified she "believe[d] that Social Security was contacted" and when she did not hear from SSA, she believed "for some reason, that I qualified for both." (TR 22-23.) On the other hand, Plaintiff testified she did not remember at the time of the ALJ hearing what she had been told or what she knew and she believed "that if I was notified that I needed to contact Social Security that I would done that. For some reason I did believe, at that time." (TR 22.) And Plaintiff testified that based on her prior work history with the United States Postal Service she believed the cumulative total amount she received in both FECA and (un-reduced) Social Security disability benefits "was from that work history." (TR 23.) Plaintiff also testified, however, that "[i]n the very beginning I had a concern about the amount" and she "was pretty sure that I had sent a copy of a notice from Workman's Comp." (TR 15.) When the Social Security disability benefits payments did not change after electing to receive FECA benefits, then, Plaintiff could have been expected to know – based on the FECA letter and as her testimony shows – those payments were incorrect.

To be sure, as the Eighth Circuit has explained: "Beneficiaries are not presumed to know of each . . . arcanum of social-security law. They are not presumed to have acted with fault when,

---

[3] "TR" refers to the transcript of the hearing before the ALJ, included in the administrative record filed in this case. *See* Doc. 19-1 at 302-341.

5

Case 3:18-cv-05102-RK   Document 22   Filed 09/30/21   Page 5 of 8

in the absence of changed personal circumstances, they accept a benefit payment in the amount which they had been accustomed to receiving each month." *Peeler v. Heckler*, 781 F.2d 649, 653-54 (8th Cir. 1986) (citation omitted). Here, though, Plaintiff's personal circumstances did change. She affirmatively elected to receive FECA benefits alongside Social Security disability payments and, as her testimony supports, she recognized the larger payment (based on receiving both FECA benefits and un-reduced Social Security disability benefits) could have been incorrect.

In her Complaint, Plaintiff also argues the ALJ's decision is not supported by substantial evidence because "[a]t the time in question, the Plaintiff . . . was suffering from debilitating mental illness" and the ALJ did not adequately understand or consider Plaintiff's "mental incapacity." As noted above, federal law requires that in considering the fault, if any, of an overpaid benefits claimant, the decision must consider any mental or physical limitations of the individual. Here, the ALJ concluded the evidence of Plaintiff's mental health challenges did not support a finding that her mental impairments or challenges prevented her from reporting FECA benefits. Specifically, in its decision the ALJ referenced letters that had been submitted on Plaintiff's behalf concerning her mental state and mental health struggles with depression and anxiety, including from Plaintiff's clinical psychologist, Dr. Suzanne McKenna. (Doc. 19-1 at 118-19.)

Before the ALJ, Plaintiff submitted several letters from family members and her clinical psychologist, Dr. Suzanne McKenna, addressing Plaintiff's past and current mental health struggles and her lack of fraudulent intent. The letters demonstrate at the time (as well as now) Plaintiff suffered from mental health issues including severe depression and anxiety. Plaintiff did not present any medical evidence or other explanation *how* these mental health and medical challenges impacted her judgment or her ability to read and understand the notice she received about her FECA benefits. Dr. McKenna's letter stated Plaintiff left her position at the United States Postal Service due to "significant and severe depression and suicidality, as well as debilitating anxiety," but she "has been working in therapy since the development of these conditions to be able to function as effectively as possible[.]" (Doc. 19-1 at 274.) Dr. McKenna's letter did not explain how Plaintiff's diagnoses specifically impacted her daily life regarding Plaintiff's judgment or her ability to read and understand the FECA notice, nor how it would have precluded her from notifying SSA given Plaintiff's testimony that she had some concerns about the larger amount after electing to receive FECA benefits.

Dr. McKenna also submitted a new letter in support of Plaintiff after the ALJ's decision stating at the time Plaintiff began receiving Social Security disability benefits she was "significantly depressed to the point of having difficulty getting out of bed and managing activities of daily living," as well as significant anxiety.[4] (Doc. 19-1 at 37.) Dr. McKenna stated it was "short-sighted" to conclude Plaintiff "had been able to interpret correctly the correspondence at the time in her life when her mental health was at the worst." (*Id.*)

It must be reiterated in this context the burden is on the claimant (Plaintiff) to demonstrate she was without fault. Plaintiff presented no evidence articulating how her disability, diagnoses, or mental health challenges impacted her ability to function, relevant to the present issue, other than generally struggling to get out of bed and to manage daily activities. Her failure to do so with specificity to the issues here on this record "leave[s] it to the court to speculate or surmise. This is something that the court cannot do, however." *Johns v. Berryhill*, No. 1:17-cv-215, 2019 WL 6896907, at *5 (D.N.D. Dec. 18, 2019). Moreover, even if the evidence could support a finding in favor of Plaintiff, the standard of review binding this Court is whether substantial evidence supports the Commissioner's determination, not whether this Court would make the same or different decision if it were deciding the case in the first instance. It is not this Court's role to re-weigh the evidence.

Plaintiff testified she was not institutionalized or placed under a guardianship related to her mental health struggles and diagnoses. Other than conclusory assertions, Plaintiff did not explain before the ALJ how her mental health struggles impacted her cognition or ability to function. And Plaintiff testified she did not remember what she knew or had been told regarding any reporting responsibility (despite contradictory testimony at the same time, as noted above, that at the time she believed SSA had been notified). It is Plaintiff's burden to prove she is without fault for the overpayment under the applicable law. Based on a review of the record, there is substantial evidence supporting the ALJ's finding that despite her mental health struggles and challenges, Plaintiff could have been expected to know the Social Security disability payments she received after electing to concurrently receive FECA benefits were incorrect when they did not change

---

[4] In its brief SSA acknowledges Dr. McKenna's second letter, although not submitted before the ALJ, is properly before the Court as a part of the "record as a whole" of which the Court must review to determine whether the ALJ's decision is supported by substantial evidence. *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013).

when she began receiving FECA benefits at the same time. And the ALJ expressly considered the evidence Plaintiff did set forth regarding her mental health struggles and challenges. Plaintiff presented little to no evidence of *how* her mental health struggles impacted or affected her life, symptoms she suffered, and the struggles she had to endure on a daily basis. Without more, that Plaintiff's suffering from depression and anxiety does not under these circumstances satisfy her burden to prove she is without fault under the law. The evidence shows (including her own testimony) that at a minimum she could have been expected to know the Social Security disability payments were incorrect inasmuch as they remained the same after she elected to receive FECA benefits at the same time. 20 C.F.R. § 404.507(c). On this record, the Court does not find the ALJ's decision is not substantially supported by the evidence.

## Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes this case must be affirmed for the reasons set forth herein.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 30, 2021